Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS JACOBSON,<br><br>Plaintiff,<br><br>v.<br><br>JANE T. HIMMELVO, JESSICA HAMILTON, PAUL MANAUT, VUTHY SEAN JENKINS, SAMIRA A. ADAAN, KIRBY BRACKEL, ALLEN E. DE LA CRUZ, MATTHEW GAUTHIER, SCOTT HOSHI-NAGAMOTO, ROSE WOHN, and DOES 1-20,<br><br>Defendants. | Case No. 3:19-cv-01716-WHA<br><br>**AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff files this Amended Complaint against Defendants, based upon the following:

**NATURE OF THE CASE**

1. This is a civil rights case in which Defendants Contra Costa County (County), medical staff, jail staff, and up to 20 individuals violated the United States Constitution and 42 U.S.C. § 1983, by their deliberate indifference to Plaintiff Jacobson's serious medical needs and use of excessive and unnecessary force while he was defenseless.

2. Plaintiff arrived at Martinez Detention Facility (MDF), a County jail, with lumbar spine fractures and Type One Diabetes. MDF jail and medical staff were well aware of these

AMENDED COMPLAINT Case No. 3:19-cv-01716-WHA          Page 1

1 conditions because Plaintiff informed them of his conditions and they were described in the
medical records that accompanied him upon his transfer to MDF from Sutter Health Memorial
Hospital (Sutter Hospital).

3. Despite the knowledge of MDF jail and medical staff of Plaintiff's serious medical conditions, Defendants denied him adequate insulin for weeks, failed to provide him with surgery on his spine that was medically recommended and which he needed desperately, and ignored the sepsis that was spreading throughout his body despite its numerous symptoms.

4. As a result of Defendants' deliberate indifference to Plaintiff's serious medical needs, he endured weeks of excruciating pain until he received four surgeries on his back, went into organ failure and a coma because of his mistreated diabetes, and an infection spread to his heart, lungs, and sternum, also requiring multiple surgeries.

5. While Plaintiff was incapacitated in the hospital, Sheriff's Deputies cuffed his wrists to to opposite sides of his hospital bed for up to 30 hours at a time for no reason other than to torture him, and, while he was cuffed and shackled in the hospital bed would further torment him by twisting his ears, bending his fingers backwards, and slapping his face.

6. Inadequate treatment and physical therapy following his surgeries has left Plaintiff in continuing pain and the inability to walk properly.

**JURISDICTION AND VENUE**

7. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and (a)(4), which provide for original jurisdiction of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

8. Venue is proper in the United States District Court for Northern District of California pursuant to 28 U.S.C. § 1391, because the events and circumstances giving rise to Plaintiff's claims occurred in Contra Costa County.

9. <u>Intradistrict Assignment</u>: This case should be assigned to the San Francisco or Oakland Division of this Court pursuant to Local Rule 3-2(d), because the claims arise in Contra

Costa County.

**PARTIES**

10. Plaintiff Nicholas Jacobson is currently 29-years old. At all times relevant to this lawsuit he has been a pretrial detainee in the custody of the Contra Costa County Sheriff.

11. Defendant Jane T. Himmelvo is a medical doctor who was obligated to provide medical care to Plaintiff while he was in the custody of Contra Costa County. At all times relevant to this lawsuit, this defendant was acting under color of State law.

12. Defendant Jessica Hamilton is a medical doctor who was obligated to provide medical care to Plaintiff while he was in the custody of Contra Costa County. At all times relevant to this lawsuit, this defendant was acting under color of State law.

13. Defendant Paul Manaut is a nurse practitioner who was obligated to provide medical care to Plaintiff while he was in the custody of Contra Costa County. At all times relevant to this lawsuit, this defendant was acting under color of State law.

14. Defendant Vuthy Sean Jenkins is a Licensed Vocational Nurse who was obligated to provide medical care to Plaintiff while he was in the custody of Contra Costa County. At all times relevant to this lawsuit, this defendant was acting under color of State law.

15. Defendant Samira A. Adaan is a Licensed Vocational Nurse who was obligated to provide medical care to Plaintiff while he was in the custody of Contra Costa County. At all times relevant to this lawsuit, this defendant was acting under color of State law.

16. Defendant Kirby Brackel is a Contra Costa County Deputy Sheriff who maintained custody of Plaintiff while he was hospitalized. At all times relevant to this lawsuit, this defendant was acting under color of State law.

17. Defendant Allen E. De La Cruz is a Contra Costa County Deputy Sheriff who maintained custody of Plaintiff while he was hospitalized. At all times relevant to this lawsuit, this defendant was acting under color of State law.

18. Defendant Matthew Gauthier is a Contra Costa County Deputy Sheriff who maintained custody of Plaintiff while he was hospitalized. At all times relevant to this lawsuit,

this defendant was acting under color of State law.

19. Defendant Scott Hoshi-Nagamoto is a Contra Costa County Deputy Sheriff who maintained custody of Plaintiff while he was hospitalized. At all times relevant to this lawsuit, this defendant was acting under color of State law.

20. Defendant Rose Wohn is a Contra Costa County Deputy Sheriff who maintained custody of Plaintiff while he was hospitalized. At all times relevant to this lawsuit, this defendant was acting under color of State law.

21. Doe Defendants 1-20 are individuals who acted with deliberate indifference to Plaintiff's serious medical needs, and his health and safety, and/or inflicted on Plaintiff excessive use of force. Plaintiff does not know the names of the Doe Defendants because their actions and inactions took place while Plaintiff was in acute medical distress and/or while he was unconscious. Plaintiff will substitute the true identities of the Doe Defendants when he learns them.

**FACTS**

22. On June 21, 2017, Plaintiff was transferred from Sutter Hospital to MDF. He had been hospitalized at Sutter Hospital for four days following a car accident.

23. As soon as he was transferred to MDF, he began receiving grossly inadequate medical care, resulting in unnecessary severe pain, the spread of an infection to his heart, lungs, and sternum, organ failure, and causing him to fall into a coma. Fortunately, he regained consciousness from the coma, but he has continued to receive grossly inadequate medical care, including little to no physical therapy following four back surgeries, virtually no effort to limit his ongoing pain, and has likely suffered permanent injuries, all caused by MDF's deliberate indifference to his serious medical needs.

24. For several days, Defendants also housed Plaintiff on a different level from facilities such as the nursing station to get his insulin three times per day, the jail's telephone, the television room, and visitation with his family and lawyer. No elevator was available for Plaintiff to access those facilities, which required Plaintiff to climb and descend two flights of stairs.

Because of his physical condition, Plaintiff could not climb and descend stairs, or could not do so without experiencing excruciating pain. Defendants' placement of Plaintiff as described in this paragraph caused Plaintiff deliberately inflicted, wanton pain.

**Diabetes**

25. Since the age of 13, Plaintiff has had Type One Diabetes Mellitus. He was, nevertheless, able to live a normal life and regulate his blood sugar with proper medical care and his own training on how to maintain healthy blood sugar levels.

26. When he began being detained at MDF, the facility provided Plaintiff insulin only sporadically and at grossly inadequate doses, even though the amount of insulin he required was clear from his medical records and his informing staff. His prescribed dose was 15-20 units per meal; however, the jail provided him at times only 1-2 units per meal.

27. The first ten days he was at MDF his blood sugar levels fluctuated from 300 mg/dl to as high as 500. Normal blood sugar levels for someone with diabetes are 80-130 or, within two hours after meals, under 180. The ordinary standard of medical care requires that a diabetic with blood sugar above 240 be treated immediately, and above 300 is extremely dangerous and requires intervention by a physician.

28. Although it was otherwise obvious from his blood sugar levels that Plaintiff's diabetes was not being treated properly, Plaintiff, his mother, and his lawyer also informed MDF staff numerous times that his blood sugar was way too high, that Plaintiff appeared "out of it," was slurring his speech, had abdominal pain, and was vomiting, all of which are symptoms that his diabetes was being grossly mismanaged.

29. Out of desperation, Plaintiff's mother delivered insulin to the jail for her son.

30. On June 25, 2017, Plaintiff was in so much pain and was so weak that he could not walk. To speak to his mother, he crawled to the telephone.

31. On multiple occasions, nursing staff reported Plaintiff's dangerously high blood sugar levels to Defendant Himmelvo, who either ignored them or prescribed inadequate insulin to address his condition.

32. On multiple occasions, nursing staff reported Plaintiff's dangerously high blood sugar levels to Defendant Hamilton, who either ignored them or prescribed inadequate insulin to address his condition.

33. Defendant Manaut, a nurse practitioner, also examined Plaintiff on multiple occasions when his blood sugar levels were dangerously high but neither made changes to his insulin regimen nor took other measures to try to correct his out-of-control diabetes.

34. On one or more occasions, Defendant Adaan did not even check Plaintiff's blood sugar level as scheduled, purportedly because he did not eat a meal, which is grossly below the standard of care.

35. By July 5, 2017, when his blood sugar reached 500, Plaintiff lapsed into a coma.

36. On July 9, 2017, while Plaintiff was still in a coma, the treating physician asked Plaintiff's mother to visit him to say goodbye, as his organs were failing because "they couldn't get his fever down or diabetes under control."

37. Soon thereafter, doctors performed emergency surgery to save Plaintiff's life.

**Spine Fractures and Infection**

38. Plaintiff was diagnosed with lumbar spine fractures at Sutter Hospital immediately preceding his transfer to MDF. Doctors suggested spine surgery and advised him of the risks that included death or paralysis. He was not, however, permitted to speak with his family about this potentially perilous decision. He was also given pain medication that masked the seriousness of the injury. As a result, he declined the surgery at that time.

39. After he was transferred to MDF, he was not provided adequate pain medication and at times was not able to walk or stand. He realized that he, in fact, desperately needed the back surgery that was suggested at Sutter Hospital.

40. Plaintiff, along with his criminal defense lawyer, made multiple requests for him to receive back surgery while he was at MDF between June 21, 2017 and July 5, 2017 because he was in excruciating pain and at times could not walk, such that he had crawl to move about the jail. Defendant Jenkins informed Plaintiff that "back surgery was not indicated." This incorrect

determination may or may not have been made in consultation with a Defendant doctor.

41. On June 26, 2017, Plaintiff requested a back brace to provide support that would allow him greater mobility. Defendant Jenkins refused his request. That refusal may or may not have been made in consultation with a Doe Defendant doctor.

42. Later, after unnecessarily enduring several weeks of the worst pain he had experienced in his life with inadequate pain medicine, Plaintiff underwent four surgeries on his back.

43. After his multiple back surgeries, MDF has provided Plaintiff minimal, sporadic physical therapy, which is essential to his recovery. As a result, he cannot walk properly. It is not clear if his condition is now permanent or if he could walk normally again if MDF were to provide the physical therapy he needs.

44. On more than one occasion after requesting physical therapy, MDF guards told him to try to walk with his walker as physical therapy, as if that alone would lead him to recovery, then mocked him as he struggled.

45. While Plaintiff was in custody at MDF between June 21 and July 5, 2017, he also noticed there was something very wrong with a wound on his leg. He requested medical care for what he thought might have been a cyst that burst. After it burst, Plaintiff experienced dizziness, stomach pains, diarrhea, and vomiting, of which he informed medical staff. Defendant Jenkins' response to his request for treatment for what appeared to be a serious infection was "request denied . . . I went to see you already and this issue is resolved." In fact, neither Jenkins nor any other medical staff examined Plaintiff's infected lesion.

46. In addition to the open wound on his leg and surrounding reddened, hot skin, Plaintiff informed medical staff that he knew he had some type of infection because his blood sugar levels were not responding to the insulin he received. This knowledge was based upon his many years of treating his diabetes while contending with infections such as colds or flu. Even though the insulin provided was sporadic and insufficient, he knew his numbers should have been coming down more than they were, and he told the nurses who were checking his blood sugar

every day that he had an infection they needed to address. The nurses ignored his pleas.

47. Notwithstanding the glaring symptoms of infection, Defendants did not test Plaintiff's blood, check his white cell count, take blood cultures to check for bacteria, examine the wound and skin breakdown on his leg, or prescribe him antibiotics.

48. By the time Plaintiff arrived at Contra Costa Regional Medical Center from MDF on July 5, 2017, his white blood cell count was 22,000, his respiratory rate was 33, and his heart rate was 153, all of which are indicators of a severe, advanced infection that Defendants ignored.

49. The infection in Plaintiff's leg spread to his heart, sternum, and lungs, requiring several additional surgeries. Defendants' failure to properly treat his diabetes interfered with his healing from the surgeries and infection. Had MDF staff not been deliberately indifferent to Plaintiff's serious medical needs and timely provided him with antibiotics and/or other necessary treatment, he likely would have avoided the life-threatening illness and surgeries he was forced to endure.

**Excessive Use of Force**

50. After Plaintiff regained consciousness from his coma in July 2017, he remained in the hospital handcuffed and leg-shackled. On numerous occasions between July 2017 and January 2018, Defendant Deputies De La Cruz, Brackel, Gauthier, Hoshi-Nagamoto, Wohn, and Doe Deputies cuffed his wrists to opposite sides of his hospital bed for up to 30 hours at a time. Since he was incapacitated, cuffing him in this way served no purpose but to inflict on him excruciating pain. The Defendant deputies watching also him periodically twisted his ears, and bent his fingers backwards, and slapped Plaintiff for no reason. That sadistic conduct eventually stopped, apparently because the MDF guards became aware that hospital nurses witnessed it.

**CLAIMS FOR RELIEF**

**COUNT ONE: 42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the Constitution of the United States –**
**Deliberate Indifference to Serious Medical Needs, Health and Safety**

51. Plaintiff brings Count One against Defendants Himmelvo, Hamilton, Manaut, Jenkins, and Adaan, as well as Doe Defendants, in their individual capacities.

52. Based upon the allegations in this Complaint, the Defendants were deliberately indifferent to Plaintiff's serious medical needs, health, and safety, in violation of the Fourteenth Amendment to the Constitution of the United States.

53. Defendants' deliberate indifference caused Plaintiff serious injuries.

### COUNT TWO: 42 U.S.C. § 1983
### Violation of the Fourteenth Amendment to the Constitution of the United States – Excessive Use of Force

54. Plaintiff brings Count Two against Defendants Brackel, De La Cruz, Gauthier, Hoshi-Nagamoto, Wohn and Doe Deputies who physically abused Plaintiff, in their individual capacities.

55. Based upon the allegations in this Complaint, Defendants used excessive force on Plaintiff, in violation of the Fourteenth Amendment to the Constitution of the United States.

56. Defendant deputies caused Plaintiff prolonged excruciating pain and trauma.

### JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor, to include:

a) General damages, including but not limited to, pain, suffering, and humiliation, in an amount determined according to proof;

b) Special damages, including but not limited to, past, present and/or future wage loss, income and support, and other special damages in an amount determined according to proof;

c) Reasonable attorney fees as provided by law;

d) Costs of court;

e) Such further relief in favor of Plaintiff as is just and proper.

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR PLAINTIFF